## LITTLE v. WILSON, HOLT & TROUTMAN.

No. 20240.   Opinion Filed July 14, 1931.

Mounts & Chamberlin, for plaintiff in error.

Wilson & Roe, for defendant in error.

KORNEGAY, J.  This is a proceeding in error from the county court of Tillman county, Okla. The plaintiff in error was the defendant below.  The case started in the justice of the peace court.  It was upon an account, and the statement of it can be found on page 9 of the case-made.  It may be a typographical error, but it started off "JR. J. J. Little, Frederick, Oklahoma, January 2, 1928, to Dixie Store, DR."  The plaintiff below was Wilson, Holt & Troutman, a corporation, doing business at Frederick, Okla., as the Dixie Store.

The account begins on the 27th of February, 1925, and is balanced on December 31, 1925, and shows $131.57 on the debit side,

and $18.50 on the credit side, and starts out again on the 1st of January, 1926, with a balance of $113.07, and runs to September 22, 1926, making a total of $255.34 on the debit side, subject to $12 cash, leaving a balance on January 21, 1927, of $243.34, subject to a cash payment of $100 on December 14, 1927, showing a balance due of $143.34.

The case was tried on the 18th of April, 1928, before the justice of the peace, and the justice of the peace gave judgment for the $143.34, less $11.75, being an item sold to Ethel Little, a daughter of the defendant and after her marriage, reducing the claim to $131.62, according to the judgment found on page 16 of the record.  The writ of garnishment was served on J. L. Meeks on January 6, 1928, and an interest on a cotton crop was levied on January 6, 1928, and was appraised at $25.

The verified answer was made on the 16th of March, 1928, in which the defendant denies owing anything, and claims to have overpaid on the account, and that no authority was given to charge the goods to him, and nonliability on the part of the defendant.

On the 17th of September, 1928, the case before the county court was tried, and the evidence was introduced.  On behalf of the plaintiff, Mr. W. H. Cox was introduced, and testified as to the account, and the ledger showing the account was introduced as plaintiff's exhibit No. 1, and can be found on page 54 of the record.  It appeared from this ledger that there was opposite some of the items the words, "Ethel", "Son", "Jr.", "Wife", "Senora," and "Clifford," and the witness says that different members of the family purchased the goods.  He testified to an item of $5.90 purchased on February 27, 1926, by J. J. Little.  He established that some of the purchasers were minor children, with the exception of Ethel, and the court ruled out $9.85 for shoes, as not being admissible, because they were purchased by Ethel.  There was further testimony that he had sent out statements to Mr. Little.  The tickets were produced, and the witness did not know which son had gotten a part of the goods. Some of the tickets were J. J. Little, Jr.'s. Beginning at page 66 of the record, it appears that a great many items were gotten by J. J. Little, Jr., and the tickets so show. At page 72, in referring to it, the following took place:

"Q.  Now, Mr. Cox, all of those items except the dress that Mrs. Little bought was either gotten by J. J. Little or Miss Ethel, weren't they?  A.  Well, they were gotten by

the children. Q. Nothing charged except that dress by Mrs. Little and it was returned; the rest was gotten by J. J., Jr., or Ethel? A. Yes, sir. Q. Making a total of how much? A. You mean what the balance was? Q. Yes, the balance for 1925? A. $113.07."

In the 1926 account, it was claimed that the defendant, Little, himself, got $5.90 and $17.71, and other members of the family, Senora and wife and Clifford Little, and he stated that all he knew was what the book showed.

C. F. Smith was sworn on behalf of the plaintiff, and he stated that he was in the store until about the 20th of March, 1926, and that in 1924, the account was settled, and that in 1925, the defendant came in and wanted to know if the witness would sell to the defendant as he had when Mr. Gully was in charge, and he said that he would, and that this was after Mr. Wilson took charge; that, in September, 1925, the defendant came in and said his boy was getting "quite an account, here, and I will see it paid." He said nothing about not being liable for the account, and never mentioned it after that.

J. L. Meeks testified and stated that Little, the defendant, told him he had an account at the Dixie Store and a note at the Bank of Commerce, and that he paid $100 on it, but later got a letter from Mr. Little telling him not to pay but $80. A demurrer to the evidence was overruled.

The defendant, J. J. Little, testified that J. J. Little, Jr., was working for himself in 1925, and he had no control over him and had not had since 1923. He also stated that he saw Mr. Gully and told him in 1924, or the early part of 1925, that he would not be responsible for the goods sold to J. J. Little, Jr., and the witness bought nothing in 1925. Notice of his and his wife's not being responsible for goods gotten by others, inserted in the Frederick Leader of April 1, 1925, was introduced. He stated that he owed plaintiff $85, and told Mr. Meeks to pay them only that amount, but Meeks had already paid $100. He also stated that he would not deny any of the account that his family bought, except Ethel and J. J., Jr.

J. J. Little, Jr., testified that the account was charged to himself, and that he was 23 years old and married; that he married on the 29th of November, 1925. A letter of November 18, 1925, addressed to him at Frederick, was introduced, as follows:

"The Dixie Store—Jeff J. Wilson
"Dry Goods, Clothing, Shoes, Millinery, Ladies Ready-To-Wear.

"Frederick, Oklahoma.
"Nov. 18, 1925.

"Mr. J. J. Little, Jr.
"Frederick, Oklahoma.

"Dear Mr. Little, Jr.:

"Our books show that you owe us $101.35; that according to our terms of sale is long past due. If there is any reason why this account should not be paid, we would appreciate your calling and giving us your reason.

"If it is correct, we would very much appreciate your check at the very earliest convenience.

"Thanks in advance.

"Yours very truly,
"The Dixie Store,
"Per J. J. Wilson."

The witness detailed what he had bought, and said he had bought it on his own account, and his father was not responsible.

There were some other witnesses, but for the purposes of this case the above recitals are sufficient. There does not appear to have been a request for an instructed verdict. The court charged the jury and set out the claim of the defendant, and gave an instruction, No. 2, which is as follows:

"2. You are further instructed that, if you believe from a preponderance of the evidence, that the plaintiff sold to the defendant, J. J. Little, or his minor children the items or any item in the account sued upon, then you will find for the plaintiff unless you find for the defendant under the instructions hereafter given you. You are further instructed that, under the laws of the state of Oklahoma, the father is liable for debts made and incurred by his wife and minor child or children for necessaries, unless said child or children are not under his control at the time said debt is or was made, and the party furnishing the such necessaries have knowledge of the facts, unless said parent should have made a contract to pay said debt or lead said party to pay or to believe that he is liable for the same."

He also gave instruction No. 2A, which is as follows:

"2A. You are instructed that, if you should believe from the evidence in this case, that any part therein sued upon was made by the defendant's minor son, J. J. Little, Jr., and if you should further believe that in the time said debt was incurred that the defendant did not have his minor son under his charge or control and that he was transacting business for himself, and you further

find that the plaintiff had notice, or had be n notified of these facts, then the defendan. would not be liable for any of such items furnished J. J. Little, Jr., sold to him after such notice was given."

Exceptions were taken to these instructions by the defendant. and errors are assigned here that those instructions were erroneous,

The defendant below asked for an instruction as follows:

"You are instructed that if you should believe from the evidence in this case that any part of the debt herein sued upon was incurred or made by the defendant's minor son, J. J. Little, Jr., and you should further believe that at the time said debt was incurred or made that defendant did not have his minor son under his charge or control. then you are instructed that said defendant would not be liable for said debt, or any part thereof, unless the evidence should further show that defendant made a contract to pay the same himself.

"Refused and exceptions allowed defendant. W. D. Scott, County Judge."

This is complained of here, as well as of the failure to grant a new trial. We think that the instructions given, and the instruction refused, clearly indicate that the trial court below acted on the wrong theory as to the liability of the plaintiff in error. Instructions say that the defendant, Little, would be liable for goods sold by the tradesmen to any of his minor children, and that the father is liable under the law of the state of Oklahoma for any debts made or incurred by his wife, minor child, or minor children, for necessaries, unless the child or children are not under his control at the time the debt was made, and the party furnishing such necessaries have knowledge of the facts, with a proviso that if the parent had made a contract to pay the debt, or "led the party to pay or believe that he is liable for the same." The 2A instruction carries the same idea of liability for any debt contracted by a minor son, even though he was out from under the control or charge of the defendant, with a proviso that the plaintiff would have to have notice for the defendant to escape liability.

Tested by these instructions, very few parents would be able to meet the bills at the end of the month. In the present case, there is no evidence offered tending to show special authorization, and the reliance is that the party getting the property was simply a minor, and that by virtue of the minority, if the goods were necessary, the father would be liable.

Evidently, in the mind of the court, the Oklahoma statute was the foundation for the instruction, probably section 8034 (C. O. S. 1921), as follows:

"8034. Parent liable for necessaries. If a parent neglects to provide articles necessary for his child who is under his charge, according to his circumstances, a third person may in good faith supply such necessaries and recover the reasonable value thereof from the parent."

However, section 8041 provides as follows:

"8041. No liability for other's acts. Neither parent or child is answerable, as such, for the act of the other."

In the present case, there was no proof that the articles gotten by the two children, Ethel and J. J., Jr., were what is classed under the law as necessaries, and the evidence is uncontradicted that neither was under the charge of the father. Neither was there any proof of the neglect by the father to provide such articles that were necessary for a child under his charge.

On the other hand, there is positive proof that J. J. Little, Jr., was doing business for himself, and had been for some time when he got the goods. Besides the letter, that is undenied in the case, it is practically conclusive that the goods were supplied on his own credit, rather than his father's. He was a married man. according to this evidence, in November, 1925. He testified that he was 23 years old in 1928. He had been past 18, therefore, for two years when the account was made in this case. Evidently, as a young man, he was using his own credit, from all the evidence in the case, and the tradesman evidently contracted with him.

Under section 4972, C. O. S. 1921, and sections 4976, 4977, 4978, and 4979 of the same, the minor, J. J. Little, at the time he got the goods in this case, was capable of binding himself for necessaries. The theory of liability of parents and of husbands for the contracts of members of their family is largely that of agency, express or implied. In the present case, there is no proof of express agency, and there is no proof of implied agency, as to the items gotten by J. J. Little, Jr. On the theory of necessaries, there is absolutely no proof as to whether the articles are necessaries, neither is there any proof that the defendant was under obligation to furnish necessaries to the one who got the goods.

The case comes within the doctrine laid down in Perry v. Myers, 127 Okla. 27, 259 Pac. 556, as follows:

"If a husband or parent neglects to make adequate provision for the support of his wife, or children who are in his charge, according to his circumstances, a third person may, in good faith, supply such necessaries and recover the reasonable value thereof from such husband or parent. Sections 6614, 8034, C. O. S. 1921. The pleadings, however, disclose that this is not an action against the husband for necessaries furnished the wife and children, but an action on an open account for merchandise purchased by an implied or authorized agent of the defendant. It is not alleged that the defendant failed and refused to furnish his family with the necessaries of life and that the plaintiff furnished the same under such conditions."

The doctrine is perhaps more forcibly illustrated by the Supreme Court of Arkansas, in the case of Smith v. Gilbert, 8 L. R. A. (N. S.) 1098, where the court says:

"The third instruction is erroneous for the reason that it allows the defendant credit for money paid to the plaintiff's son, even though he may have wrongfully hired the boy over the plaintiff's objection, and even though the plaintiff had not refused to furnish his son necessary food and clothing. The rule is that the parent cannot be made liable for the necessities furnished to his child unless he has refused to furnish them himself. Any other rule would allow the child or a stranger, and not the parent, to be the judge of the needs of his child. Rodgers, Dom. Rel., sec. 493."

The doctrine is also very well expressed in 20 Ruling Case Law, sec. 31, on the subject of Parent and Child, where the following language is used:

"* * * The civil remedy is more commonly worked out by holding that, if the father leaves his children destitute, he confers on anyone who finds them in that condition an agency to supply them with necessaries; the volunteer can therefore recover the cost of the supplies from the father in a civil action. But there must be a clear case of neglect of duty; as long as the child is under the direction and control of the father, it is in the father's discretion to determine what is necessary for him, and unless there is manifest dereliction on his part, an outsider cannot substitute his judgment for the father's."

We think it a very good rule to hold that the wage-earner should be consulted before his wages are dissipated, either by a wife or minor children, and any other rule would result, in most cases, in a complete dissipation of everything he could earn, leaving nothing for inevitable old age.

The cause is reversed, and a new trial ordered, the plaintiff in error to recover the cost of the proceeding in error, which the lower court is directed to tax.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, ANDREWS, and McNEILL, JJ., concur. SWINDALL, J., absent.